ORIGINAL

# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO
### CIVIL DIVISION

**BRENDA & MICHAEL BUTLER**
3515 CARLISLE AVENUE
LATONIA, KENTUCKY 41015    :

   :

   :

        **Plaintiffs,**    :

   :

**v.**    :

   :

**ABUBAKAR ATIQ DURRANI, M.D.**    :
(Served by Hague Convention)

And    :

   :

**JOURNEY LITE OF CINCINNATI, LLC** :
10475 READING RD., SUITE 115    :
CINCINNATI, OH 45241

   :

SERVE: CT CORPORATION SYSTEM    :
1300 EAST NINTH STREET
CLEVELAND, OH 44114    :
(Serve via Certified mail)

**And**    :

**CENTER FOR ADVANCED SPINE**    :
**TECHNOLOGIES, INC.**
(served by Hague Convention)    :

Case No.    **A 1 4 0 3 4 8 9**

Judge:

**COMPLAINT
& JURY DEMAND**

*REGULAR MAIL WAIVER*

FILED

2014 JUN 12 P 1: 31

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH

## FACTUAL ALLEGATIONS OF PLAINTIFF

1. At all times relevant, Plaintiffs, ("Plaintiff" or "Ms. Butler") were residents of and domiciled in the State of Kentucky.

2. At all times relevant, Plaintiffs were married.

3. At all times relevant, Defendant Dr. Abubakar Atiq Durrani ("i



D106644399 INI

EXHIBIT A

1

licensed to and did in fact practice medicine in the State of Ohio.

4. At all times relevant, Center for Advanced Spine Technologies, Inc. ("CAST") was licensed to and did in fact perform medical services in the state of Ohio, and was and is a corporation authorized to transact business in the state of Ohio.

5. At all times relevant Journey Lite of Cincinnati, LLC ("Journey Lite") was a Deleware corporation transacting business and performing and managing medical services in the state of Ohio.

6. At all times relevant herein, Journey Lite held itself out to the public, and specifically to Plaintiffs, as a hospital providing competent and qualified medical and nursing services, care and treatment by and through its physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

7. The amount in controversy exceeds the jurisdictional threshold of this Court.

8. The subject matter of the Complaint arises out of medical treatment by the Defendants in Hamilton County, Ohio. This Court is thus the proper venue to grant the Plaintiff the relief she seeks.

9. Plaintiff sought treatment with Dr. Durrani in February 2012 for migraine headaches.

10. Dr. Durrani recommended neck surgery to alleviate Plaintiff's pain.

11. In or about February 2012 Dr. Durrani performed surgery on Plaintiff at Journey Lite.

12. Plaintiff followed up with Dr. Durrani complaining of constant migraine pain.

13. Following surgery Plaintiff had increased pain and continuous migraine headaches.

14. Plaintiff's quality of life has diminished and she suffers on a daily basis because of the surgery performed by Dr. Durrani.

15. Upon information and belief, Dr. Durrani used Infuse/BMP-2 "off –label" and/or Puregen without Mrs. Butler's knowledge or consent, causing Mrs. Butler harm.

16. Upon information and belief, the surgery performed by Dr. Durrani was medically unnecessary and improperly performed.

17. As a direct and proximate result of Mrs. Butler's surgery, Dr. Durrani's negligence, and the Defendant's negligence, Mrs. Butler has suffered harm.

18. Plaintiff did not become aware of Infuse/BMP-2 and/or Puregen until she contacted her undersigned counsel.

### INFUSE/BMP-2

19. Dr. Durrani oftentimes used BMP-2 "off-label" when performing surgeries.

20. BMP-2 is manufactured, marketed, sold and distributed by Defendant Medtronic under the trade name "Infuse."

21. Dr. Durrani is a consultant for Medtronic.

22. Defendants did not inform Plaintiff of Durrani's financial interest, conflicts of interest or consulting arrangement with Medtronic.

23. Medtronic, provided in writing to Dr. Durrani and CAST the approved uses for BMP-2, the substance also referred to as Infuse, which is a bone morphogenic protein, used as an artificial substitute for bone grafting in spine surgeries.

24. BMP-2 is not approved by the Food and Drug Administration for use in the cervical and thoracic spine.

25. BMP-2 is neither safe nor approved for use on children less than twenty one (21) years of age.

26.     For use in spinal surgery, BMP-2/Infuse is approved by the FDA for a limited

procedure, performed on a limited area of the spine, using specific components.

Specifically, the FDA approved Infuse for one procedure of the spine: Anterior Lumbar

Interbody Fusion ("ALIF" or "Anterior" approach); and only in one area of the spine: L4

to S1; and only when used in conjunction with FDA-Approved Components: LT-CAGE

Lumbar Tapered Fusion Device Component ("LT-CAGE")

27.     Use of Infuse in cervical or thoracic surgery, or use through the back (posterior),

or side (lateral), or on areas of the spine outside of the L4-S1 region (e.g., the cervical

spine), or using components other than or in addition to the LT-CAGE is not approved by

the FDA, and thus such procedures and/or use of non-FDA approved componentry is

termed "off-label."

28.     When used off-label, Infuse frequently causes excessive or uncontrolled (also

referred to as "ectopic" or "exuberant") bone growth on or around the spinal cord. When

nerves are compressed by such excessive bone growth, a patient can experience, among

other adverse events, intractable pain, paralysis, spasms, and cramps in limbs.

29.     The product packaging for BMP-2/Infuse indicates it causes an increased risk of

cancer four (4) times greater than other bone graft alternatives.

30.     Dr. Durrani, CAST staff and employees, and West Chester/UC Health personnel

did not disclose to Plaintiff their intent to use BMP-2/Infuse, and further, did not disclose

their intent to use BMP-2/Infuse in a way not approved by the FDA.

31.     Dr. Durrani used BMP-2 in Plaintiff in manners not approved by Medtronic or the

FDA.

4

32.    Defendants did not inform Plaintiff that Dr. Durrani used Infuse/BMP-2 in his surgeries.

33.    Plaintiff would not have allowed BMP-2 to be used by Dr. Durrani in her surgery in a manner that was not approved by the FDA or Medtronic, Infuse/BMP-2's manufacturer.

34.    Plaintiff would not have consented to the use of BMP-2 in her body if informed of the risks by Dr. Durrani, CAST staff and employees, or any Journey Lite personnel.

35.    The written informed consent of Dr. Durrani, CAST, and Journey Lite signed by Plaintiff lacked the disclosure of Infuse/BMP-2's use in her procedure.

36.    Plaintiff never received a verbal disclosure of Infuse/BMP-2 from Dr. Durrani, CAST staff and employees, or any Journey Lite personnel.

37.    Medtronic specifically required Infuse/BMP-2 only be used in "skeletally mature patients" with degenerative disc disease.

38.    Medtronic required at least six (6) months of non-operative treatment prior to use of Infuse/BMP-2.

39.    Dr. Durrani regularly used Infuse/BMP-2 without this six (6) month non-operative treatment.

40.    Medtronic required BMP-2 always be used in conjunction with a metal LT cage.

41.    Dr. Durrani regularly used BMP-2 without a proper LT cage in his surgeries.

## PUREGEN

42.    Dr. Durrani oftentimes used Puregen when performing surgeries.

43.    Puregen is a product produced by Alphatec Spine.

44.    Dr. Durrani was and is a paid consultant for Alphatec Spine.

5

45.    Dr. Durrani has an ownership stake in the Alphatec Spine.

46.    Puregen has never been approved by the FDA for any human use.

47.    Puregen is now removed from the market for any use.

48.    Dr. Durrani used the product Puregen as bone graft substitute similar to Infuse/BMP-2 during spinal surgeries.

49.    Dr. Durrani, CAST staff and employees, and Journey Lite personnel did not disclose their intent to use Puregen, nor did they inform Plaintiff that it was a product that was not approved by the FDA for human use.

50.    Dr. Durrani used Puregen in Plaintiff in manners not approved by the FDA.

51.    Plaintiff was not informed by Dr. Durrani, CAST staff and employees, or any Journey Lite personnel that Dr. Durrani used Puregen in Plaintiff's surgery.

52.    Plaintiff would not have allowed Puregen to be used by Dr. Durrani in her surgery in a manner that was not approved by the FDA.

53.    Plaintiff would not have consented to the use of Puregen in her body if informed of the risks by Dr. Durrani, CAST staff and employees, or any Journey Lite personnel.

54.    The written informed consent of Dr. Durrani and CAST signed by Plaintiff lacked the disclosure of Puregen's use in her procedures.

55.    Plaintiff never received a verbal disclosure of Puregen from Dr. Durrani, CAST staff and employees, or any Journey Lite Personnel.

### DR. DURRANI COUNTS:

### COUNT I: NEGLIGENCE

56. Defendant Dr. Durrani owed his patient, Plaintiff, the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have

6

exercised under like or similar circumstances.

57. Defendant Dr. Durrani breached his duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgery, improper performance of the surgeries, and improper follow-up care addressing a patient's concerns.

58. As a direct and proximate result of the aforementioned negligence and deviation from the standard of care on the part of the Defendant Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT II: BATTERY

59. Dr. Durrani committed battery against Plaintiff by performing surgeries that were unnecessary, contraindicated for Plaintiff's medical condition, and for which he did not properly obtain informed consent, inter alia, by using Infuse/BMP-2, PureGen and/or Baxano in ways and for surgeries not approved by the FDA and medical community, and by the failure to provide this information to Plaintiff.

60. Plaintiff would not have agreed to the surgeries if she knew the surgeries were unnecessary, not approved by the FDA, and not indicated.

61. As a direct and proximate result of the aforementioned battery by Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT III: LACK OF INFORMED CONSENT

62. The informed consent forms from Dr. Durrani and CAST, which they required Plaintiff to sign, failed to fully cover all the information necessary and required for

7

the procedures and surgical procedures performed by Dr. Durrani. Dr. Durrani and CAST each required an informed consent release.

63. In addition, no one verbally informed Plaintiff of the information and risks required for informed consent at the time of or before the Plaintiff's surgery.

64. Dr. Durrani failed to inform Plaintiff of material risks and dangers inherent or potentially involved with her surgery and procedures.

65. Plaintiff subsequently developed severe and grievous injuries as a direct and proximate result of lack of informed consent.

66. Had Plaintiff been appropriately informed of the need or lack of need for surgery and other procedures and the risks of the procedures, Plaintiff would not have undergone the surgeries or procedures.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. Dr. Durrani's conduct as described above was intentional and reckless.

68. It is outrageous and offends against the generally accepted standards of morality.

69. It was the proximate and actual cause of Plaintiff's psychological injuries, emotional injuries, mental anguish, suffering, and distress.

70. Plaintiff suffered severe distress and anguish so serious and of a nature that no reasonable man or woman would be expected to endure.

## COUNT V: FRAUD

71. Dr. Durrani made material, false representations to Plaintiff and her insurance company related to Plaintiff's treatment including: stating the surgery was necessary, that Dr. Durrani "could fix" Plaintiff, that more conservative treatment was unnecessary and futile, that the surgeries would be simple or was "no big deal", that

8

Plaintiff would be walking normally within days after each surgery, that the procedures were medically necessary and accurately reported on the billing to the insurance company, that the surgery was successful, and that Plaintiff was medically stable and ready to be discharged.

72. Dr. Durrani also concealed the potential use of Infuse/BMP-2 and/or Puregen in Plaintiff's surgery when he had a duty to disclose to Plaintiff his planned use of the same.

73. These misrepresentations and/or concealments were material to Plaintiff because they directly induced the Plaintiff to undergo her surgery.

74. Dr. Durrani knew or should have known such representations were false, and/or made the misrepresentations with utter disregard and recklessness as to their truth that knowledge of their falsity may be inferred.

75. Dr. Durrani made the misrepresentations before, during, and after the surgery, with the intent of misleading Plaintiff and her insurance company into relying upon them. Specifically, the misrepresentations were made to induce payment by the insurance company, without which Dr. Durrani would not have performed the surgeries, and to induce Plaintiff to undergo the surgery without regard to medical necessity and only for the purpose of receiving payment.

76. The misrepresentations and/or concealments were made during the Plaintiff's office visits at Dr. Durrani's CAST offices and/or Journey Lite.

77. Plaintiff was justified in his reliance on the misrepresentations because a patient has a right to trust their doctor and that the facility is overseeing the doctor to ensure the patients of that doctor can trust the facility.

9

78. As a direct and proximate result of the aforementioned fraud, Plaintiff did undergo surgery, which was paid for in whole or in part by her insurance company, and suffered all damages requested in the prayer for relief.

### COUNT VI: SPOLIATION OF EVIDENCE

79. Dr. Durrani willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

80. Dr. Durrani spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

81. Dr. Durrani's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

### COUNT VII: LOSS OF CONSORTIUM

82. At all times relevant, the Plaintiffs were married.

83. As a result of the wrongful acts and omissions of Dr. Durrani, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

84. All the aforesaid injuries and damages were caused proximately by the acts and omissions of Dr. Durrani.

### CAST COUNTS:

### COUNT I: VICARIOUS LIABILITY

85. At all times relevant, Defendant Dr. Durrani was an agent, and/or employee of CAST.

86. Dr. Durrani is in fact, the owner of CAST.

87. Defendant Dr. Durrani was performing within the scope of his employment with
CAST during the care and treatment of Plaintiff.

88. Defendant CAST is responsible for harm caused by acts of its employees for conduct
that was within the scope of employment under the theory of respondeat superior.

89. Defendant CAST is vicariously liable for the acts of Defendant Dr. Durrani alleged in
this Complaint including all of the counts asserted against Dr. Durrani directly.

90. As a direct and proximate result of Defendant CAST's acts and omissions, Plaintiff
sustained all damages requested in the prayer for relief.

### COUNT II: NEGLIGENT HIRING, RETENTION & SUPERVISION

91. CAST provided Dr. Durrani, inter alia, financial support, control, medical facilities,
billing and insurance payment support, staff support, medicines, and tangible items
for use on patients.

92. CAST and Dr. Durrani participated in experiments using Infuse/BMP-2 and/or
Puregen bone graft on patients, including Plaintiff, without obtaining proper informed
consent thereby causing harm to Plaintiff.

93. CAST breached its duty to Plaintiff, inter alia, by not supervising or controlling the
actions of Dr. Durrani and the doctors, nurses, staff, and those with privileges, during
the medical treatment of Plaintiff at CAST.

94. The Safe Medical Device Act required entities such as CAST to report serious
injuries, serious illnesses, and deaths related to failed medical devices to the FDA and
the manufacturer; this was never done.

95. Such disregard for and violations of federal law represents strong evidence that CAST

11

negligently hired, retained and supervised Dr. Durrani.

96. As a direct and proximate result of the acts and omissions herein described, including but not limited to failure to properly supervise medical treatment by Dr. Durrani, Plaintiff sustained all damages requested in the prayer for relief.

## COUNT III: FRAUD

97. CAST sent out billing to Plaintiff at her home following her surgeries at Journey Lite.

98. The exact dates these medical bills were sent out are reflected in those medical bills.

99. These bills constituted affirmative representations by CAST that the charges related to Plaintiff's surgery was medically appropriate and properly documented.

100. The bills were sent with the knowledge of CAST that in fact Plaintiff's surgeries were not appropriately billed and documented and that the services rendered at Journey Lite associated with Dr. Durrani were not appropriate.

101. The bills sent by CAST to Plaintiff falsely represented that Plaintiff's surgeries were appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

102. Plaintiff relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiff for CAST's services in association with Dr. Durrani's surgery.

103. As a direct and proximate result of this reliance on the billing of CAST, Plaintiff incurred medical bills that she otherwise would not have incurred.

12

104. CAST also either concealed from Plaintiff that they knew about Dr. Durrani, including that Infuse/BMP-2 and/or Puregen would be used in Plaintiff's surgery, or misrepresented to Plaintiff the nature of the surgery, and the particular risks that were involved therein.

105. CAST's concealments and misrepresentations regarding Infuse/BMP-2 and/or Puregen and the nature and risks of Plaintiff's surgery were material facts.

106. Because of its superior position and professional role as a medical service provider, CAST had a duty to disclose these material facts to Plaintiff and a duty to refrain from misrepresenting such material facts to Plaintiff.

107. CAST intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery, and thereby profited from the surgery and procedures Dr. Durrani performed on Plaintiff at Journey Lite.

108. Plaintiff was unaware that BMP-2 and/or Puregen would be used in Plaintiff's surgery and therefore, was unaware of the health risks of Infuse/BMP-2 and/or Puregen's use in Plaintiff's spine.

109. Had Plaintiff known before Plaintiff's surgery that Infuse/BMP-2 and/or Puregen would be used in Plaintiff's spine and informed of the specific, harmful risks flowing therefrom, Plaintiff would not have undergone the surgery with Dr. Durrani at Journey Lite.

110. As a direct and proximate result of the fraud against plaintiff by CAST, Plaintiff sustained all damages requested in the prayer for relief.

13

## COUNT IV: OHIO CONSUMER SALES PROTECTION ACT

111.    Although the Ohio Consumer Sales Protection statutes O.R.C 1345.01 et seq.
exempts physicians, a transaction between a hospital and a patient/consumer is not
clearly exempted.

112.    CAST's services rendered to Plaintiff constitute a "consumer transaction" as
defined in ORC Section 1345.01(A).

113.    CAST omitted suppressed and concealed from Plaintiff facts with the intent that
Plaintiff rely on these omissions, suppressions and concealments as set forth herein.

114.    CAST's misrepresentations, and its omissions, suppressions and concealments of
fact, as described above, constituted unfair, deceptive and unconscionable acts and
practices in violation of O.R.C 1345.02 and 1345.03 and to Substantive Rules and
case law.

115.    CAST was fully aware of its actions.

116.    CAST was fully aware that Plaintiff was induced by and relied upon CAST's
representations at the time CAST was engaged by Plaintiff.

117.    Had Plaintiff been aware that CAST's representations as set forth above were
untrue, Plaintiff would not have used the services of Defendants.

118.    CAST, through its agency and employees knowingly committed the unfair,
deceptive and/or unconscionable acts and practices described above.

119.    CAST's actions were not the result of any bona fide errors.

120.    As a result of CAST's unfair, deceptive and unconscionable acts and practices,
Plaintiff has suffered and continues to suffer damages, which include, but are not
limited to the following:

14

a.  Loss of money paid

b.  Severe aggravation and inconveniences

c.  Under O.R.C. 1345.01 Plaintiff is entitled to:

      i.  An order requiring CAST restore to Plaintiff all money received from Plaintiff plus three times actual damages and/or actual/statutory damages for each violation;

      ii.  All incidental and consequential damages incurred by Plaintiff;

      iii.  All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

      iv.  Such other and further relief that this Court deems just and appropriate.

## COUNT V: SPOLIATION OF EVIDENCE

121.  CAST, through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

122.  CAST, through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

123.  CAST's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

## COUNT VI: LOSS OF CONSORTIUM

124.  At all times relevant, the Plaintiffs were married.

125.  As a result of the wrongful acts and omissions of CAST, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society,

loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

126.    All the aforesaid injuries and damages were caused proximately by the acts and omissions of CAST.

## JOURNEY LITE, LLC COUNTS:

### COUNT I: NEGLIGENCE

127.    Journey Lite owed their patient, Plaintiff, through its agents and employees the duty to exercise the degree of skill, care, and diligence an ordinarily prudent health care provider would have exercised under like or similar circumstances.

128.    Journey Lite acting through its agents and employees breached their duty by failing to exercise the requisite degree of skill, care and diligence that an ordinarily prudent health care provider would have exercised under same or similar circumstances through, among other things, negligent diagnosis, medical mismanagement and mistreatment of Plaintiff, including but not limited to improper selection for surgeries, improper performance of the surgery, improper assistance during Plaintiff's surgeries and improper follow up care addressing a patient's concerns.

129.    The agents and employees who deviated from the standard of care include nurses, physician assistants, residents and other hospital personnel who participated in Plaintiff's surgeries.

130.    The management, employees, nurses, technicians, agents and all staff during the scope of their employment and/or agency of Journey Lite's knowledge and approval,

16

either knew or should have known the surgery was not medically necessary based
upon Dr. Durrani's known practices; the pre-op radiology; the pre-op evaluation and
assessment; and the violation of their responsibility under the bylaws, rules,
regulations and policies of Journey Lite.

131.  As a direct and proximate result of the aforementioned negligence and deviation
from the standard of care by the agents and employees of Journey Lite, Plaintiff
sustained all damages requested in the prayer for relief.

## COUNT II: NEGLIGENT CREDENTIALING, SUPERVISION, & RETENTION

132.  As described in the Counts asserted directly against Dr. Durrani, the actions of Dr.
Durrani with respect to Plaintiff constitute medical negligence, lack of informed
consent, battery, and fraud.

133.  Journey Lite negligently credentialed, supervised, and retained Dr. Durrani as a
credentialed physician by:

    a.  .Violating their JCAHO rules by allowing Dr. Durrani to repeatedly violate
the Journey Lite bylaws with its full knowledge of the same;

    b.  Failing to adequately review, look into, and otherwise investigate Dr.
Durrani's educational background, work history and peer reviews when he
applied and reapplied for privileges at Journey Lite;

    c.  Ignoring complaints about Dr. Durrani's treatment of patients reported to it
by Journey Lite staff, doctors, Dr. Durrani's patients and by others;

    d.  Ignoring information they knew or should have known pertaining to Dr.
Durrani's previous privileged time at other Cincinnati area hospitals,

17

including Children's Hospital, University Hospital, Deaconess Hospital, Good Samaritan Hospital and Christ Hospital.

134. The Safe Medical Device Act required entities such as Journey Lite to report serious injuries, serious illnesses, and deaths related to failed medical devices to the FDA and the manufacturer; this was never done.

135. As a direct and proximate result of the negligent credentialing, supervision, and retention of Dr. Durrani, Plaintiffs sustained all damages requested in the prayer for relief.

## COUNT III: FRAUD

136. Journey Lite sent out billing to Plaintiff at her home following her surgery at Journey Lite.

137. The exact dates these medical bills were sent out are reflected in those medical bills.

138. These bills constituted affirmative representations by Journey Lite that the charges related to Plaintiff's surgery were medically appropriate and properly documented.

139. The bills were sent with the knowledge of Journey Lite that in fact Plaintiff's surgery was not appropriately billed and documented and that the services rendered at Journey Lite associated with Dr. Durrani were not appropriate.

140. The bills sent by Journey Lite to Plaintiff falsely represented that Plaintiff's surgery was appropriately indicated, performed and medically necessary in contra-indication of the standard of care.

18

141.   Plaintiffs relied on the facility holding Dr. Durrani out as a surgeon and allowing him to perform surgeries at its health care facility as assurance the facility was overseeing Dr. Durrani, vouching for his surgical abilities, and further was appropriately billing Plaintiffs for Journey Lite's services in association with Dr. Durrani's surgeries.

142.   As a direct and proximate result of this reliance on the billing of Journey Lite, Plaintiff incurred medical bills that she otherwise would not have incurred.

143.   Journey Lite also either concealed from Plaintiff that they knew about Dr. Durrani, including that Infuse/BMP-2 and/or Puregen would be used in Plaintiff's surgery, or misrepresented to Plaintiff the nature of the surgery and the particular risks that were involved therein.

144.   Journey Lite's concealments and misrepresentations regarding Infuse/BMP-2 and/or Puregen and the nature and risks of Plaintiff's surgery were material facts.

145.   Because of its superior position and professional role as a medical service provider, Journey Lite had a duty to disclose these material facts to Plaintiffs and a duty to refrain from misrepresenting such material facts to Plaintiffs.

146.   Journey Lite intentionally concealed and/or misrepresented said material facts with the intent to defraud Plaintiff in order to induce Plaintiff to undergo the surgery, and thereby profited from the surgery and procedures Dr. Durrani performed on Plaintiff at Journey Lite.

147.   Plaintiff was unaware that Infuse/BMP-2 and/or Puregen would be used in Plaintiff's surgery and therefore, was unaware of the health risks of Infuse/BMP-2 or Puregen's use in Plaintiff's spine.

19

148.   Had Plaintiff known before Plaintiff's surgery that Puregen would be used in
       Plaintiff's spine and informed of the specific, harmful risks flowing there from,
       Plaintiff would not have undergone the surgery with Dr. Durrani at Journey Lite.

149.   As a direct and proximate result of the fraud upon Plaintiffs by Journey Lite,
       Plaintiff sustained all damages requested in the prayer for relief.

                   **COUNT IV: OHIO CONSUMER SALES PROTECTION ACT**

150.   Although the Ohio Consumer Sales Protection statutes O.R.C 1345.01 et seq.
       exempts physicians, a transaction between a hospital and a patient/consumer is not
       clearly exempted.

151.   Journey Lite's services rendered to Plaintiff constitute a "consumer transaction"
       as defined in ORC Section 1345.01(A).

152.   Journey Lite omitted suppressed and concealed from Plaintiffs facts with the
       intent that Plaintiffs rely on these omissions, suppressions and concealments as set
       forth herein.

153.   Journey Lite's misrepresentations, and its omissions, suppressions and
       concealments of fact, as described above, constituted unfair, deceptive and
       unconscionable acts and practices in violation of O.R.C 1345.02 and 1345.03 and to
       Substantive Rules and case law.

154.   Journey Lite was fully aware of its actions.

155.   Journey Lite was fully aware that Plaintiffs were induced by and relied upon
       Journey Lite's representations at the time Journey Lite was engaged by Plaintiffs.

156.   Had Plaintiffs been aware that Journey Lite's representations as set forth above
       were untrue, Plaintiffs would not have used the services of Defendants.

                                         20

157.    Journey Lite, through its agency and employees knowingly committed the unfair, deceptive and/or unconscionable acts and practices described above.

158.    Journey Lite's actions were not the result of any bona fide errors.

159.    As a result of Journey Lite's unfair, deceptive and unconscionable acts and practices, Plaintiffs have suffered and continues to suffer damages, which include, but are not limited to the following:

   d.   Loss of money paid

   e.   Severe aggravation and inconveniences

   f.   Under O.R.C. 1345.01 Plaintiff is entitled to:

        i.   An order requiring Journey Lite restore to Plaintiffs all money received from Plaintiffs plus three times actual damages and/or actual/statutory damages for each violation;

        ii.  All incidental and consequential damages incurred by Plaintiffs;

        iii. All reasonable attorneys' fees, witness fees, court costs and other fees incurred;

        iv.  Such other and further relief that this Court deems just and appropriate.

**COUNT V: PRODUCTS LIABILITY**

160.    At all times Infuse/BMP-2 and Puregen are and were products as defined in R.C. § 2307.71(A)(12) and applicable law.

161.    Journey Lite (aka supplier) supplied either Medtronic's (aka manufacturer) Infuse/BMP-2 for surgery performed by Dr. Durrani on Plaintiff.

21

162.    Journey Lite, as a supplier, failed to maintain Infuse/BMP-2 properly.

163.    Journey Lite did not adequately supply all components required to use either Infuse/BMP-2 properly.

164.    Journey Lite knew or should have known the FDA requirements and Medtronic's requirements for using either Infuse/BMP-2.

165.    Journey Lite stored either Infuse/BMP-2 at its facility.

166.    Journey Lite ordered either Infuse/BMP-2 for surgery performed by Durrani.

167.    Journey Lite did not adequately warn Plaintiff that Infuse/BMP-2 would be used without all FDA and manufacturer required components.

168.    Journey Lite did not gain informed consent from Plaintiff for the use of Infuse/BMP-2, let alone warn of the supplying of the product without FDA and manufacturer requirements.

169.    Journey Lite failed to supply either Infuse/BMP-2 (aka product) in the manner in which it was represented.

170.    Journey Lite failed to provide any warning or instruction in regard to Infuse/BMP-2, and failed to make sure any other party gave such warning or instruction.

171.    Plaintiffs suffered physical, financial, and emotional harm due to Journey Lite's violation of the Ohio Products Liability act. Plaintiff's injuries were a foreseeable risk

172.    Plaintiff did not alter, modify or change the product, nor did Plaintiff know that the product was being implanted without all required components.

173.    Journey Lite knew or should have known that the product was extremely dangerous and should have exercised care to provide a warning that the product was

22

being used and that the product was being used outside FDA and manufacturer requirements. The harm caused to Plaintiff by not providing an adequate warning was foreseeable.

174. Journey Lite knew that the product did not conform to the representation of the intended use by the manufacturer yet permitted the product to be implanted into Plaintiff.

175. Journey Lite, as a supplier, acted in an unconscionable manner in failing to supply the product without all FDA and manufacturer required components.

176. Journey Lite, as a supplier, acted in an unconscionable manner in failing to warn Plaintiffs that the product was being supplied without all FDA and manufacturer required components.

177. Journey Lite 's actions demonstrate they took advantage of the Plaintiffs inability, due to ignorance of the product, to understand the product being implanted without FDA and manufacturer required components.

178. Journey Lite substantially benefited financially by the use of the product as the product allowed for Defendant to charge more for the surgery.

179. Plaintiffs suffered economic loss as defined in R.C. § 2303.71(A)(2) and applicable law,

180. Plaintiffs suffered mental and physical harm due to Journey Lite's acts and omissions.

181. Plaintiffs suffered emotional distress due to acts and omissions of Journey Lite and are entitled to recovery as defined in R.C, § 2307.71(A)(7) and applicable law.

182. Journey Lite violated the Ohio Products Liability Act R.C. § 2307.71-2307.80

23

183.    Journey Lite violated R.C. § 2307.71(A)(6).

184.    Journey Lite violated The Ohio Consumer Sales Practices Act R.C. § 1345.02-.03.

185.    Journey Lite provided inadequate warnings are defined in R.C, § 2307.76(A) and applicable law.

### COUNT VI: SPOLIATION OF EVIDENCE

186.    Journey Lite through its agents and employees, willfully altered, destroyed, delayed, hid, modified and/or spoiled ("spoiled") Plaintiff's records, billing records, emails, paperwork and related evidence.

187.    Journey Lite through its agents and employees, spoiled evidence with knowledge that there was pending or probable litigation involving Plaintiff.

Journey Lite's conduct was designed to disrupt Plaintiff's potential and/or actual case, and did in fact and proximately cause disruption, damages and harm to Plaintiff.

### COUNT VII: LOSS OF CONSORTIUM

188.    At all times relevant, the Plaintiffs were married.

189.    As a result of the wrongful acts and omissions of Journey Lite, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, loss of affection, loss of assistance, and loss of conjugal fellowship, all to the detriment of Plaintiffs' marital relationship.

190.    All the aforesaid injuries and damages were caused proximately by the acts and omissions of Journey Lite.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests and seeks justice in the form and procedure of a jury, verdict and judgment against Defendants on all claims for the following damages:

24

1.      Past medical bills;

2.      Future medical bills;

3.      Lost income and benefits;

4.      Lost future income and benefits;

5.      Loss of ability to earn income;

6.      Past pain and suffering;

7.      Future pain and suffering;

8.      Plaintiff seeks a finding that her injuries are catastrophic under Ohio Rev. Code §2315.18;

9.      All damages permitted under Ohio Products Liability Act R.C. § 2307.71-2307.80 and all other applicable law;

10.     All incidental costs and expenses incurred as a result of her injuries;

11.     The damages to their credit as a result of her injuries;

12.     Punitive damages;

13.     Costs;

14.     Attorneys' fees;

15.     Interest;

16.     All property loss;

17.     All other relief to which she is entitled including O.R.C. 1345.01

Based upon 1-17 itemization of damages, the damages sought exceed the minimum jurisdictional amount of this Court and Plaintiff seeks in excess of $25,000.

Respectfully Submitted,

Stephanie L. Collins (0089945)
*Attorney for Plaintiff*
5247 Madison Pike
Independence, KY 41051
Phone: 513-729-1999
Fax: 513-381-4084
scollins@ericdeters.com

## JURY DEMAND

Plaintiff makes a demand for a jury under all claims.

Stephanie L. Collins (0089945)

**IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
CIVIL DIVISION**

BRENDA & MICHAEL BUTLER         :

                                     :         Case No.

                 :

        Plaintiff,            :         Judge

                 :

                 :

v.                          :        **MOTION FOR EXTENSION OF TIME
TO FILE AFFIDAVIT OF MERIT**

                 :

ABUBAKAR ATIQ DURRANI, M.D., et al :

                 :

                 :

        Defendants.        :

---

Comes now Plaintiff, through Counsel, and files this Motion for an Extension of Time for 90 days to file an Affidavit of Merit in support of Plaintiff's medical negligence claim.

Notably, Plaintiff's claims related to Billing Fraud, Battery, Spoliation of Evidence, and Intentional Infliction of Emotional Distress do not require an affidavit of merit.

Furthermore, this case was filed, inter alia, to preserve all applicable statutes of limitation. Therefore, the Plaintiff respectfully requests a brief opportunity to acquire all relevant medical records, billing, and radiology imaging files, and have Plaintiff's retained expert medical consultants review the records.

Based on the other substantially similar claims against Dr. Durrani, Plaintiffs' nurse consultant review, and the preliminary medical documents, the case is unquestionably supported by Ohio law.

**THEREFORE**, Plaintiff respectfully requests a ninety (90) day extension to file their affidavit of merit; an opportunity to be heard if the relief is not granted; and Court oversight in the medical records production, which have not been timely produced by Defendants, if necessary.

Respectfully submitted,

Stephanie L. Collins (#0089945)
Attorney for Plaintiff
5247 Madison Pike
Independence, KY 41051
859-363-1900 Fax: 859-363-1444

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **BRENDA & MICHAEL BUTLER** | : | Case No. |
| | : | |
| | : | Judge: |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ABUBAKAR ATIQ DURRANI, M.D., et al.**: | : | |
| Pakistan | : | |
| (Served via Hague Convention) | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

---

## INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

---

Comes now Plaintiffs, by and through counsel, hereby request that Defendants respond to the following Interrogatories and Requests for Production of Documents in accordance with the Ohio Rules of Civil Procedure:

## I. DEFINITIONS AND INSTRUCTIONS

The following definitions apply to these Interrogatories and Requests for Production of Documents.

A.      The term "document" as used herein shall be used in its broadest sense and shall mean and include all handwritten, printed, typed, recorded, computer-generated and/or graphic matter of every kind and description, including as defined by Rule 34 of the Rules of Civil Procedure, and includes all copies, drafts, proofs, both originals and copies either (1) in the possession, custody or control of Defendant regardless of where located, or (2) produced, generated by, known to or seen by Defendant, but not now in

1

his/her possession, custody or control, regardless of where located or not still in existence.

Such "documents" shall include, but are not limited to applications, resumes, job posting, contracts, leases, agreements, papers, photographs, tape recordings, transcripts, checks, checkbooks, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, other types of ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, letter or other forms of correspondence, envelopes, folders or similar containers, communications, programs, telex, TWX, and other teletype communications, computer printouts and any other printout sheets, movie film, slides, microfilm, video or audio tapes, memoranda, reports, studies, summaries, minutes, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agenda, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitor's logs, schedules, price lists, telegrams, drawings, sketches, plans, specifications, diagrams, drafts, books and records, formal records, desk calendars, notebooks, diaries, registers, appointment books, budgets, analyses, projections, minutes of meetings, conferences or discussions of any kind, tax returns, and other data compilations from which information can be obtained (including matter used in data processing) or translated, and any other printed, written, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated or made.

For purposes of the production of "documents", the term shall include copies of all documents being produced, to the extent the copies are not identical to the original, thus requiring the production of copies that contain markings, additions or deletions that make them different in any way from the original.

B. When an Interrogatory asks for the description or identification of a document, it is intended that the answer shall state the following information with respect to each such document:

a. Title;

b. Date;

    c. Author(s);

    d. Addressee(s);

    e. Recipient(s) of original or copy;

    f. File Number or other identifying mark or code;

    g. Nature and subject matter of the document; and

    h. Location by room, building, and address, or if lost or no longer in existence, the last

        known location and custodian and the circumstances of the loss or destruction.

    In lieu of identifying any document, a copy of such document may be attached to Defendant's responses.

    C.    When an Interrogatory requires the description or identification of an individual, it is intended that the answer shall state the following information with respect to each such individual:

    a. Name;

    b. Present or last known address;

    c. Present or last known business address, including name of current employer and        employment classification or job title;

    d. Present or last known home and business telephone number;

    e. Whether the individual is a present or former employee of Defendant and, if so, the        precise job or position titles held, the dates of employment, and the reason for        termination of employment if individual is a former employee.

    D.    "Relating to" means in whole or in part constituting, containing, concerning, embodying, reflection, describing, analyzing, identifying, stating, referring to, dealing with, or in any way pertaining to the subject matter specified in the Interrogatory or document request.

    E.    "Representative" or "representatives" used with reference to a person means (a) officers, directors, partners, associates, employees, servants, agents, independent contractors, volunteers, assistants, non-paid assistants, subsidiaries, and affiliates of such person; and (b) other persons or legal or business entities acting on behalf or, or in concert with, such person, including, without limitation, consultants,

3

advisors, lawyers, accountants and any other person of any description retained or employed for business or financial reasons of any kind.

F.      "And" and "or" are to be construed whether conjunctively or disjunctively as necessary to bring within the scope or the specification all materials that might otherwise be construed to be outside its scope; and "any" and "all" as used herein mean "each" and "every". The use of the term "including" shall be construed to mean "without limitation".

G.      The term "address" refers to the current address or last known address, if the current address is unknown.

H.      The term "telephone number" refers to the current phone number, including area code, or the last known area code and phone number, if the current phone number is unknown.

I.      The terms "you" and/or "your" refers to the Defendant on whom these Interrogatories were served or any person answering these Interrogatories on behalf of the Defendant.

J.      With respect to all Interrogatories, all information is to be divulged which is within the knowledge, possession or control of the Defendant, his/her attorneys, investigators, agents, employees, guardian, or next friend, or other representatives.

K.      The word "incident" refers to the acts or omissions of the Defendant which are the subject matter of this litigation.

L.      Where an Interrogatory calls for an answer in more than one part, each part should be separated in the answer so that the answer is clearly understandable.

M.      All answers must be made separately and fully stated under oath.

N.      You are under a continuing duty to seasonably supplement the answers to these Interrogatories with respect to any question directly addressed to identify and location of persons having knowledge of discoverable matters, the identity and location of persons expected to be called as expert witnesses at trial, the subject matter on which expert witnesses are expected to testify, and to correct any response which you know or later learn is not correct.

O.       Space for your answers has been provided beneath each Interrogatory; should there not be sufficient space to complete your answer, you may complete it in sequence on a separate appendix attached to the answers and identified appropriately.

P.       Any reference to the "visits", "examinations", "treatments" or "incidents" means the occurrence of the actions that took place concerning the care and treatment of Plaintiff, as referred to in the Complaint.

Q.       Any reference to the "dates of this incident" without further description mean the dates spanning the care and treatment of Plaintiff by Defendants.

R.       In these requests, a reference to Children's or Children's Hospital means Children's Medical Center of Cincinnati, Inc.; a reference to West Chester means West Chester Hospital, LLC; a reference to UC means UC Health; a reference to Durrani means Dr. Abubakar Atiq Durrani; and a reference to CAST means Center for Advanced Spine Technologies, Inc.

## INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Produce all billing records from your facility for all procedures, treatment, surgery(s) and hospitalizations for Plaintiff(s) as a result of Dr. Durrani's procedures, treatments, surgery(s) and hospitalizations.

   **ANSWER:**

2. Produce all billing records from #1 that were for Dr. Durrani in that you billed for Dr. Durrani's services for Dr. Durrani.

   **ANSWER:**

3. Produce the amount of #1 which you received payment by insurance, payment by Medicaid and Medicare and payment for cash, check or credit card. Breakdown what was paid by what source as described here.

   **ANSWER:**

4. Produce the amount of #1 you "wrote off."

   **ANSWER:**

5

5. Produce a copy of all bills, letters, collection letters and all correspondence to Plaintiff(s) you or a collection agency sent to Plaintiff requesting payment.

   **ANSWER:**

6. Were any amount of the bills referenced in #1 ever sent to a collection agency? If so, produce the name, address, phone number and contact person from the agency, which handles your account.

   **ANSWER:**

7. Were any of the bills referenced in #1 ever sent to a credit agency for reporting? If so, produce a copy of the referral to the agency or agencies.

   **ANSWER:**

8. Produce a copy of the precertification records including the denial and approval of all procedures, treatment, procedures and hospitalizations from #1. This includes correspondence, applications, forms, emails and letters.

   **ANSWER:**

9. Produce the implant log for all surgeries of Dr. Durrani at your facility for Plaintiff(s).

   **ANSWER:**

10. Produce any reports, complaints, MAUDE reports, FDA reports, MIDAS reports or anything adverse about Plaintiff's treatment while at your facility which Plaintiff, a third person, staff, a doctor or you reported to anyone or received by anyone.

    **ANSWER:**

11. Produce every document or exhibit you will use on cross-examination of Plaintiff, Plaintiff's witnesses, Plaintiff's experts at deposition or at trial.

    **ANSWER:**

12. Produce every document you will use on direct examination at trial with your witnesses and expert and also ask to introduce into evidence at trial.

   **ANSWER:**


13. Produce all documentation that support you obtained informed consent and/or acknowledgement of consent from Plaintiff. Provide the names of all witnesses involved in obtaining the consent and/or acknowledgement from Plaintiff.


   **ANSWER:**

14. Produce all written and electronic documentation reflecting Plaintiff's procedures performed at West Chester were pre-approved by a third party health insurance, private or government. This includes the request for approval, all follow up requests from the carrier and the approval or denial.

   **ANSWER:**


15. Produce the identity and the names of all witnesses and persons and their last known addresses, phone numbers and email addresses who have any information pertaining to Plaintiff receiving informed consent of all the risks and benefits of each surgery performed by Dr. Durrani at Defendant hospital regardless of when and where the informed consent took place. In your answer include the specific risks and benefits disclosed to Plaintiff by Dr. Durrani and/or Defendant hospital. In your answer, also provide the details of all the above pertaining to BMP-2 and/or PureGen if applicable to Plaintiff.

   **ANSWER:**


16. Produce the names of all nurses and doctors involved in Plaintiff's case from #1.

   **ANSWER:**


17. Produce all hospital and Dr. Durrani (CAST) consents.

   **ANSWER:**


18. Produce the discharge notes from the hospital.

7

**ANSWER:**

19. Produce the history/physical exam of Plaintiff pertaining to #1.

    **ANSWER:**

20. Produce staff credentialing for those caring for Plaintiff and all supervisor/supervisee plans.

    **ANSWER:**

21. Identify all lay witnesses you will call at the trial of this matter. Subject to any scheduling order, we expect timely disclosure.

    **ANSWER:**

22. Identify all exhibits and demonstrative exhibits you will attempt to introduce at the trial of this matter. Subject to any scheduling order, we expect timely disclosure.

    **ANSWER:**

23. Identify all experts you will call at the trial of this matter. Subject to any scheduling order, we expect timely disclosure.

    **ANSWER:**

24. Relative to experts, we request the following:

    A. The expert's CV.

    B. What details of Dr. Durrani's criminal charges have you shared with the expert?

    C. A written index of all documentation, literature, medical records, medical bills and radiology the expert reviewed.

    D. A copy of all written email correspondence between you and your expert to date and supplement through trial.

8

E. The fee agreement you have signed with the expert.

F. A detailed description of what the expert's testimony will be in this case pertaining to standard of care, causation and damages and what he bases those opinions on.

Respectfully Submitted,

Stephanie L. Collins (0089945)
Attorney for Plaintiff
5247 Madison Pike
Independence, KY 41051
859-363-1900 Fax: 859-363-1444
scollins@ericdeters.com

9



## COMMON PLEAS COURT
### HAMILTON COUNTY, OHIO

*Brenda & Michael Butler* CASE NO. _A 1 4 0 3 4 8 9_

VS

*Abubakar Atiq Durrani*

WRITTEN REQUEST FOR SERVICE
TYPE OF PAPERS TO BE SERVED ARE:

- Complaint with Jury Demand
- Motion for Extension of Time to File Affidavit of Merit
- Interrogatories & Request for Production of Documents to all Defendants

PLAINTIFF/DEFENDANT REQUESTS:

CERTIFIED MAIL SERVICE ✓

PERSONAL SERVICE _____

PROCESS SERVICE _____

EXPRESS MAIL SERVICE _____

REGULAR MAIL SERVICE _____

RESIDENCE SERVICE _____

FOREIGN SHERIFF _____

ON _ Journey Lite of Cincinnati, LLC
Serve: CT Corporation System
1300 East 9th Street
Cleveland, Ohio 44114

FILED
2014 JUN 12 P 1 31

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH

_859-363-1900_
PHONE NUMBER

_89945_
ATTORNEY NUMBER

Stephanie Collins
5247 Madison Pike
Independence, Ky. 41051

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

REQUEST AND INSTRUCTIONS FOR ORDINARY MAIL SERVICE

*Brenda & Michael Butler*
Plaintiff

-vs-

INSTRUCTIONS TO THE CLERK

A 1 4 0 3 4 8 9

CASE NUMBER: _____

Defendant

IF SERVICE OF PROCESS BY CERTIFIED MAIL IS RETURNED BY THE POSTAL
AUTHORITIES WITH AN ENDORSEMENT OF "REFUSED" OR "UNCLAIMED" AND IF THE
CERTIFICATE OF MAILING CAN BE DEEMED COMPLETE NOT LESS THAN FIVE (5) DAYS
BEFORE ANY SCHEDULED HEARING, THE UNDERSIGNED WAIVES NOTICE OF THE
FAILURE OF SERVICE BY THE CLERK AND REQUESTS ORDINARY MAIL SERVICE IN
ACCORDANCE WITH CIVIL RULE 4.6 (C) OR (D) AND CIVIL RULE 4.6 (E).

*Stephanie Collins*
ATTORNEY OF RECORD          (TYPE OR PRINT)

DATE _____

ATTORNEY'S SIGNATURE

FILED

2014 JUN 12 P 1: 32

TRACY WINKLER
CLERK OF COURTS
HAMILTON COUNTY, OH